UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Ronald Butler, | Civil File No. 03-5760 (JRT/AJB) |
| Plaintiff, | |
| v. | |
| Bob Fletcher, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

---

**THIS MATTER** is before the Court, United States Magistrate Judge Arthur J. Boylan, on Plaintiff's motion to compel disclosure and Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56. Plaintiff's underlying pro se complaint alleges violations of constitutional rights during his incarceration at the Ramsey County Adult Detention Center ("ADC"). The Plaintiff appears pro se, and the Defendant appears by David F. MacMillan, Assistant Ramsey County Attorney. The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. For the reasons which follow, it is ordered that Plaintiff's motion be denied and recommended that Defendant's motion be granted and the case dismissed with prejudice.

**I.   BACKGROUND**

Plaintiff Ronald A. Butler ("Plaintiff") is currently serving a 144-month sentence imposed pursuant to a guilty plea entered on the charge of criminal sexual conduct in the first degree. See Butler v. State, No. C9-02-121, 2002 WL 31056624 at *1 (Minn. Ct. App. 2002). Plaintiff

brings this action pursuant to 42 U.S.C. § 1983, alleging that his civil rights under the Fifth, Eighth and Fourteenth Amendments were violated when he contracted tuberculosis while incarcerated at the ADC as a result of Defendant's inaction or indifference.  See Compl., ¶¶ I(B)(5) and IV; (Doc. No. 1); Mem. in Support of Compl., p. 2, 12, 17; (Doc. No. 2).  Defendant is the Ramsey County Sheriff and is the public official responsible for the operation and policies of the ADC.[1]  Fletcher Aff., ¶¶ 2-3; (Doc. No. 35); Minn. Stat. § 387.11.

### A. Tuberculosis: Epidemiology, Diagnosis and Treatment

In conjunction with the Motion for Summary Judgment, Defendant submitted an affidavit by Dr. Neal Holtan ("Dr. Holtan"), the medical director of the Ramsey County Public Health department and the physician for the Public Health Department's tuberculosis clinic, which sets forth the epidemiology, diagnosis and treatment of tuberculosis.[2]  Holtan Aff., ¶¶ 3-15; (Doc. No. 31). Tuberculosis is a pulmonary disease, and persons infected will have either an active case or a latent case.  Id., ¶ 5.  An individual with an active case is contagious, and the disease can damage the individual's lungs or other organs, and if untreated can be fatal.  Id., ¶¶ 5-6.  An individual with a latent case is not contagious, and the tuberculosis bacilli are present in the body but rendered dormant by the

---

[1] Prior to December 28, 2003, the ADC was located in downtown St. Paul at 14 West Kellogg Boulevard.  Flectcher Aff., ¶ 4.  This is the facility where Plaintiff was incarcerated.  On December 4, 2003, a new detention facility was completed at 425 Grove Street in St. Paul, and the Kellogg Boulevard facility was shut down.  Id., ¶¶ 7-8.  The acronym "ADC," as used in this Report and Recommendation, refers to the Kellogg Street facility where Plaintiff was incarcerated.

[2] In DeGidio v. Pung, Eighth Circuit Court of Appeals Judge Diana E. Murphy, at the time a United States District Judge of this Court, also discussed in detail tuberculosis infection, diagnosis and control.  See 704 F.Supp. 922, 924-28 (D.Minn. 1989), aff'd 920 F.2d 525 (8th Cir. 1990).

2

body's immune system and do not actively threaten the individual's health.  Id.

Tuberculosis is transmitted when an individual with an active, untreated case and bacilli in their lungs, coughs, sneezes, or otherwise exhales the bacilli into the air where it can be inhaled by other individuals.  Id., ¶ 7.  Individuals who inhale the tuberculosis bacilli can, but do not always, become infected.  Id.  Generally, fairly prolonged exposure to an infected person is required before an uninfected person will contract tuberculosis.  Id.  An individual with active tuberculosis may have symptoms including cough, fever, weight loss, night sweats and constant tiredness.  Id., ¶ 8. The protocol for diagnosis of tuberculosis is to first administer a Purified Protein Derivative ("PPD"), commonly known as a Mantoux test, which involves injecting an individual with a standard dose of Tuberculin.  Id., ¶ 9.  The injection site is "read" between 48 and 72 hours after the injection is administered, and if the individual develops a palpable, raised, hardened area (an "induration"), the area is measured.  Id.  For individuals in correctional facilities, if the induration is 10mm or greater, the individual is deemed positive for tuberculosis.  Id.

Both individuals with active tuberculosis and latent inactive tuberculosis will have positive PPD tests.  Id., ¶ 10.  Individuals with latent inactive tuberculosis will not have other symptoms or represent a health risk for those with whom they come in contact.  Id.  In order to determine whether an individual with a positive PPD test has active tuberculosis, it is necessary to conduct a chest x-ray and a confirming sputum test in which a sample of the material the individual coughs up is analyzed for the presence of tuberculosis bacilli.  Id., ¶ 11.  An incarcerated individual with a confirmed, active case of tuberculosis should not be confined in the general population of a correctional facility.  Id., ¶ 13. Rather, such an individual should be isolated from uninfected individuals for treatment.  Id., ¶ 13.  Once

treatment has been started, and the individual is no longer infectious, the individual can be returned to the general population.  Id.

### B.    Tuberculosis Protocol at the ADC

All inmates at the ADC are interviewed upon intake regarding whether they have any infectious diseases or symptoms suggestive of tuberculosis.  Fletcher Aff., ¶ 10; Exh. A, 407.11; Exh. B-2.  Inmates incarcerated at the ADC are administered a Mantoux test within fourteen days of admission,[3] and the test is read within 48-72 hours after administration.  Berg Aff., ¶ 8; Exh. A; (Doc. No.32).  If an inmate has a positive reaction to the Mantoux test, or if the individual has symptoms suggestive of tuberculosis, a chest x-ray is given within 72 hours.  Id.  If the chest x-ray is indicative of tuberculosis and there are no other symptoms, the individual is housed separately and sputum examination is conducted.  Id.  If the chest x-ray is indicative of tuberculosis and there are symptoms, the individual is transferred to the hospital for further evaluation including a sputum examination.  Id.  Such an individual will be housed at the hospital until tuberculosis has been ruled out as a diagnosis.  Id.

### C.    Plaintiff's Pre-Conviction Detention

On July 7, 2001, Plaintiff was arrested and taken to the Ramsey County Adult

---

[3] At some point in time, the tuberculosis screening protocol was changed from screening inmates within seven days of admission to screening within fourteen days of admission.  Berg Aff., Exh. A, p. 2 (in the sentence setting forth the time period for screening, the number 7 is crossed out and 14 is handwritten on the document).  The fourteen day period accords with the requirements of Minnesota State law.  See Minn. Stat. § 144.445, Subd. 1 ("All persons detained or confined for 14 consecutive days or more in facilities operated, licensed, or inspected by the Department of Corrections shall be screened for tuberculosis with either a Mantoux test or a chest  roentgenogram (x-ray) as consistent with screening and follow-up practices recommended by the United States Public Health Service or the Department of Health[.]").


Detention Center ("ADC"). St. German Aff., ¶ 4; (Doc. No. 34). From July 7, 2001, to July 10, 2001, Plaintiff was in administrative segregation, and on July 10, 2001, he was transferred to the general inmate population and assigned to a shared cell. Id., ¶ 5. On July 16, 2001, Plaintiff was transferred to the Ramsey County Workhouse due to overcrowding at the ADC. Id., ¶ 6. A Mantoux test was administered at the Ramsey County Workhouse, and on July 21, 2001, a reading of the test was negative. Mem. in Support of Compl., p. 6. On July 26, 2001, Plaintiff was transferred to the Washington County Jail and on August 16, 2001, he was returned to the ADC where he was again confined in the general population in a two person cell. St. Germain Aff., ¶ 7. On September 6, 2001, Plaintiff was again transferred to the Washington County Jail. Id. He remained there until he was returned to the ADC on October 18, 2001. Id. Plaintiff remained at the ADC until he was transferred to the custody of the Commissioner of Corrections of the State of Minnesota on October 31, 2001. Id. Another Mantoux test was administered after transfer to the Commissioner of Corrections and a subsequent reading was positive for tuberculosis bacilli. Mem. in Support of Compl., p. 7.

**II.    DISCUSSION**

Plaintiff alleges violations of his Procedural Due Process rights and Substantive Due Process rights under the Fourteenth Amendment and violations of his Eighth Amendment rights. Id., p. 12-18. The core allegation of Plaintiff's claims is that the ADC had inadequate safeguards in place to prevent Plaintiff from contracting tuberculosis. Plaintiff specifically contends that the policy of "double-celling" inmates at the ADC was tantamount to "rolling the dice" with respect to the possibility that inmates would catch or spread communicable diseases. Id., p. 10-11. Plaintiff also contends that it is indisputable that he contracted tuberculosis while incarcerated at the ADC. Response to Mot. for

5

Summ. J., p. 1-2; (Doc. No. 37).

Defendant seeks to dismiss Plaintiff's complaint arguing that: 1) the undisputed evidence shows that no person with active, communicable tuberculosis was confined in the ADC contemporaneously with Plaintiff; 2) the undisputed evidence shows that Plaintiff was not impermissably deprived of his procedural or substantive due process rights; and 3) Plaintiff has not shown that his Eighth Amendment rights were violated.  See Mem. in Support of Mot. for Summ. J., p. 9-15; (Doc. No. 30).

### A. Plaintiff's Discovery Motion

As an initial matter, the Court must address Plaintiff's Motion to Compel Disclosure, filed pursuant to Fed. R. Civ. P. 37, 26(a) and 26(e)(1).  (Doc. No. 27).  Plaintiff previously filed a Motion for Production of Documents, which was denied by this Court as Moot, based in part on Defendant's assurance that documents would be produced.  (Doc. No. 25, 26).  Plaintiff's current Motion refers in part to the documents which were produced by Defendant, disputing some information provided and also asking for more information.  Plaintiff did not attach any of the documents or responsive information referenced, and the Court has no way of placing his current requests in context. Plaintiff also requests information related to inmates he believes he was incarcerated with at the ADC who may have been infected with tuberculosis.  Such a request appears to be duplicative to Plaintiff's previous Motion for Production of Documents.  Plaintiff again asks for appointment of counsel, and requests that this Court order Defendant to "disclose completely" and to "cease misleading, false response[s]."  The Court deems Plaintiff's Motion largely duplicative and irrelevant.  Furthermore, there is no indication that Plaintiff conferred with Defendant regarding the requested discovery as required by

6

Fed. R. Civ. P. 37(a)(2)(A). Plaintiff's Motion is denied.

## B.  Summary Judgment Standard of Review

Summary judgment is appropriate where there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. Catrett, 477 U.S. 317, 322-23 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. See Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The Court must view the evidence, and the inferences drawn from the evidence, in the light most favorable to the nonmoving party. See Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just speedy, and inexpensive determination of every action.'" Celotex, 477 U.S. at 327.

## C.  Plaintiff's Claims

Plaintiff brings claims under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. Because the events relevant to this matter occurred when Plaintiff was a pretrial detainee, his claims are most appropriately analyzed under the Due Process Clause of the Fourteenth Amendment rather than Eighth Amendment. Crow v. Montgomery, 403 F.3d 598, 601 (8th Cir. 2005). A pretrial detainee's Due Process rights are violated when conditions of confinement

constitute punishment which deprives the detainee of the minimal civilized measures of life's necessities. See Owens v. Scott County Jail, 328 F.3d 1026, 1027 (8th Cir. 2003) (per curiam) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979)). Pretrial detainees are "accorded protections 'at least as great' as those the Eighth Amendment affords a convicted prisoner." Boswell v. County of Sherburne, 849 F.2d 1117, 1121 (8th Cir. 1988) (quoting City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983)). The general standard applied by the Eighth Circuit is the "deliberate indifference" standard of the Eighth Amendment. See, Crow, 403 F.3d at 601; Owens, 328 F.3d at 1027 (citing Whitnack v. Douglas County, 16 F.3d 954, 957 (8th Cir. 1994)).

While a pretrial detainee faces a lighter burden for demonstrating constitutional violations than a convicted prisoner, see Smith v. Copeland, 87 F.3d 265, 268 n.4 (8th Cir. 1996), a detainee must still demonstrate the elements of a deliberate indifference claim, Hartsfield v. Colburn, 371 F.3d 454, 457 (8th Cir. 2004). Deliberate indifference exists when a prison official knows that an inmate faces a substantial risk of serious harm to an inmate's health and fails to take reasonable measures to abate the risk. See Farmer v. Brennan, 511 U.S. 825, 847 (1994); Olson v. Bloomberg, 339 F.3d 730, 735 (8th Cir. 2003). To prove deliberate indifference, a plaintiff must show that the official: 1) knew of a substantial risk of serious harm to the plaintiff; and 2) disregarded or was deliberately indifferent to the risk by failing to take reasonable measures to abate it. See Pagels v. Morrison, 335 F.3d 736, 740 (8th Cir. 2003). Mere negligence or malpractice is insufficient to rise to a constitutional violation. Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing Estelle v. Gamble, 429 U.S. 97, 104-06 (1976)).

Defendant first argues that the record contains only unsupported allegations that Plaintiff contracted tuberculosis at the ADC. Defendant argues that Plaintiff has not identified anyone he shared a cell with who had a medically confirmed case of tuberculosis or that anyone he shared a cell with exhibited any of the symptoms of active tuberculosis. See Mem. in Support of Mot. For Summ. J., p. 10. Defendant further asserts that, in fact, there was no inmate with active tuberculosis in the ADC in 2001. Id., see also Berg Aff., ¶ 9 (stating that during her tenure, there has been only one case of active tuberculosis, which occurred in 1999). The Court acknowledges that Plaintiff's factual allegations are tenuous and speculative, and Plaintiff most likely has not met his burden to set forth specific facts showing that there is a genuine issue for trial. See Anderson v. Liberty Lobby, 477 U.S. at 256; see also Roberson v. Bradshaw, 198 F.3d 645, 648 (8th Cir. 1999) (reiterating that a medical need or deprivation must be obvious to a layperson or supported by medical evidence); Aswegan v. Henry, 49 F.3d 461, 464 (8th Cir. 1995) (same). Nonetheless, the Court need not decide this matter on the sufficiency of Plaintiff's factual allegations as to whether he contracted tuberculosis while detained at the ADC. As explained below, even assuming that Plaintiff did contract tuberculosis while detained at the ADC, Plaintiff's claims must still be dismissed.

With respect to the first element of the deliberate indifference analysis, there is no dispute that Defendant was aware that tuberculosis poses a potentially serious health risk to incarcerated individuals. In 1993, the Minnesota State Legislature enacted Minn. Stat. § 144.445, which established screening procedures for incarcerated individuals and employees of correctional institutions. See Minn. Laws 1993, c. 167, § 6 (eff. Jan. 1, 1994). Pursuant to Minn. Stat. § 387.11, Defendant has charge and custody of the ADC and was responsible for implementing ADC policy

regarding tuberculosis screening and containment . See Fletcher Aff., ¶¶ 3, 9. As the official in charge of implementing and overseeing the policy, Defendant necessarily knew of the risk posed by tuberculosis. Thus, the issue in this matter is whether Defendant disregarded or was deliberately indifferent to the risk posed by tuberculosis.

Plaintiff asserts that Defendant was deliberately indifferent to the serious health risk of tuberculosis by not immediately screening detainees for tuberculosis and by housing detainees in two-person cells. See Mem. in Support of Compl., p. 14. Plaintiff urges the Court to look to the procedures utilized by the Los Angeles County Jail to control the potential spread of tuberculosis as the standard against which the ADC should be measured.[4] Id., p. 14-15 (citing Jeffries v. Block, 940 F.Supp. 1509, 1515 (C.D.Cal. 1996)). The Court questions whether the policy of the Los Angeles County Jail, assuming that it has not been modified in the intervening time, is the gold standard that Plaintiff seems to think. The Court also sees significant differences between Ramsey County and Los Angeles County with respect to

---

[4] The Los Angeles County Jail's policy was

> to ask all incoming inmates if they ever had tuberculosis, or currently had tuberculosis, and to give a chest x-ray to all inmates to discover tuberculosis. * * * Any inmate whose chest x-ray disclosed a possible finding of tuberculosis was given a second chest x-ray, skin tests and culture studies to confirm the finding. * * * The County Jail, in 1994, had in operation a "pure air germicidal system" which ventilated the cells, dorms, and hallways and made them well ventilated. * * * It was also the custom and practice in 1994, defendant Block declares, that if an inmate was discovered to have tuberculosis upon arrival at the County Jail, he was isolated and segregated from inmates who did not have tuberculosis.

Jeffries, 940 F.Supp. at 1515.

climate, population, relevant state law, and other factors which render comparison difficult, if not impossible. The Court thus declines to attempt any comparison between the policies of the ADC and the Los Angeles County Jail.

In any event, the question to be answered in this matter is not whether Defendant achieved some ideal, but rather whether he exhibited deliberate indifference to the serious health risk of tuberculosis. See Pagels, 335 F.3d at 740. The uncontroverted evidence in the record shows that not only did Defendant take reasonable steps to abate the risk of tuberculosis, but that he showed considerable attention to the potential serious health risk of tuberculosis. The record shows that Defendant promulgated procedures governing the diagnosis and confinement of inmates with tuberculosis. See Fletcher Aff., ¶¶ 9-10; Exh. B. The procedures promulgated by Defendant comply with Minnesota State law, see Minn. Stat. § 144.445, and were formulated in conjunction with input from the staff and director of the health care services unit, Berg Aff., ¶ 7. Neither the fact that the ADC did not immediately screen all incoming inmates with a Mantoux test or a chest x-ray, nor the fact that the ADC housed inmates in "double-cells" comes close to the type of act or omission which comprises a constitutional violation. There is simply no material question of fact which could allow a reasonable fact-finder to conclude that Defendant acted with deliberate indifference and it is recommended that this matter be dismissed with prejudice.

### III.   RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, it is hereby ordered that:

1.   Plaintiff's Motion to Compel Disclosure (Doc. No. 27) be **DENIED**;

and recommended that:

      2.      Defendant's Motion for Summary Judgment (Doc. No. 28) be **GRANTED**, and this matter be dismissed with prejudice.


Dated:   July 14  , 2005

        s/ Arthur J. Boylan
        Arthur J. Boylan
        United States Magistrate Judge


Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before August 1, 2005.